**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., | |
| Plaintiff, | Case No. 25-cv-02056 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**COMPLAINT**

Plaintiff Warner Bros. Entertainment Inc. ("Plaintiff" or "WBEI") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over WBEI's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief,

sell products using infringing and counterfeit versions of WBEI's federally registered trademarks and/or unauthorized copies of WBEI's federally registered copyrighted works (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused WBEI substantial injury in the state of Illinois.

## II. INTRODUCTION

3.      WBEI filed this case to prevent e-commerce store operators who trade upon WBEI's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate WBEI's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. WBEI is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. WBEI has been, and continues to be, irreparably damaged through consumer confusion and dilution of its valuable trademarks and infringement of

its copyrighted works because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III. THE PARTIES

4.      WBEI is a subsidiary of Warners Bros. Discovery, Inc. ("WBD") and is headquartered in Burbank, California.  WBEI owns the trademark rights and copyrighted works asserted herein, which relate to the famous Harry Potter franchise.

5.      Since the publication of *Harry Potter and the Sorcerer's Stone* in 1997 in the USA, the world has been captivated by the fictional, magical universe created by J.K. Rowling.  The Harry Potter universe was brought to the silver screen by WBEI, starting with the first *Harry Potter* film, also titled *Harry Potter and the Sorcerer's Stone*, in 2001 in the USA.  WBEI then produced seven more films tracking the entirety of J.K Rowling's *Harry Potter* book series.  WBEI has also produced a multitude of related entertainment products, services, and experiences under the HARRY POTTER and/or WIZARDING WORLD banner that constitute a franchise of enormous breadth and value.

6.      WBEI's *Harry Potter* films are among the most successful films of all time, with the worldwide release of the films grossing over seven billion dollars. The eighth and final film, *Harry Potter and the Deathly Hallows – Part 2,* grossed more than a billion dollars—one of only nine films in cinema history to accomplish this feat.  The success of the Harry Potter franchise has led to seven major Harry Potter-themed permanent attractions around the world, including the Wizarding World of Harry Potter-themed lands at Universal Studios parks in Orlando, Florida; Hollywood, California; Beijing, China; Osaka, Japan; and The Making of Harry Potter Warner Bros. Studio Tour in Hollywood, California, Leavesden, England and Tokyo, Japan.  WBEI also produced a film series under the "*Fantastic Beasts"* banner, which is a spin-off prequel to the

*Harry Potter* films. In addition, WBEI and/or its licensees offer a large stable of Harry Potter-themed video games, including *Hogwarts Legacy*, which was the bestselling video game worldwide of 2023.

7.      WBEI markets and sells a variety of Harry Potter and Fantastic Beasts branded products, including bags, books, clothing, cosmetics, homeware, jewelry, toys, stationery, games, and other merchandise bearing WBEI's trademarks (collectively, "HP Products"). HP Products have become enormously popular, driven by WBEI's quality standards and innovative designs. Among the purchasing public, HP Products are instantly recognizable as such. HP Products are distributed and sold to consumers by WBEI through authorized licensees and retail channels, including at various Harry Potter-themed parks and attractions, Harry Potter stores owned and/or controlled by WBEI and through WBEI's www.harrypottershop.com website.

8.      Before Defendants' acts described herein, WBEI launched the Harry Potter franchise and related lines of products bearing its famous Harry Potter marks. The *Harry Potter* films, and a multitude of style guides composed of collections of photographs and artwork related to the Harry Potter universe, were also registered with the United States Copyright Office (the "HP Copyrighted Works").

9.      In addition to the *Harry Potter* films, the HP Copyrighted Works contain photographs and artwork showing numerous indicia of the Harry Potter universe, including characters described and seen in the *Harry Potter* books and movies; distinctive wands used by the Harry Potter universe characters; crests and flags related to the four house names of Hogwarts - the school attended by many of the characters in the Harry Potter universe; famous objects described and seen in the *Harry Potter* books and movies; distinctive creatures described and seen in the Harry Potter universe; famous locations described and seen in the *Harry Potter* books and

movies; and famous symbols described and seen in the *Harry Potter* books and movies. Some of the works contained in the HP Copyrighted Works are included in the chart below:[1]

| | | |
|---|---|---|
| **Harry Potter** | |  |
| **Hermione Granger** | |  |

---

[1] The works shown in the table are non-exhaustive examples of the works contained in the HP Copyrighted Works.

| | | |
|---|---|---|
| **Ron Weasley** | |  |
| **Professor Severus Snape** | | |

| | | | |
|---|---|---|---|
| **Professor Albus Dumbledore** | |  | |
| **Professor Minerva McGonagall** | |  | |



| | | | |
|---|---|---|---|
| **Rubeus Hagrid** | | | |
| **Lord Voldemort** | | | |



| | | | |
|---|---|---|---|
| **Neville Longbottom** | |  | |
| **Luna Lovegood** | |  | |
| **Dobby** | |  | |

| | |
|---|---|
| **Bellatrix Lestrange** |  |
| **Sirius Black** | |
| **Wands** | *Albus Dumbledore's Wand*<br>*Harry Potter's Wand*<br>*Hermione Granger's Wand* |

| |  |
|---|---|
| | *Ron Weasley's Wand* |
| | *Neville Longbottom's Wand* |
| | *Ginny Weasley's Wand* |
| | *Minerva McGonagall's Wand* |
| | *Luna Lovegood's Wand* |
| | *Lord Voldemort's Wand* |
| | *Severus Snape's Wand* |
| | *Bellatrix Lestrange's Wand* |
| **House Crests and Flags** | |



**Objects**

*Harry Potter's Glasses*

*Golden Snitch*



*Nimbus 2000*

*Sorting Hat*



*Triwizard Cup*



*Marauder's Map*



*Marvolo Gaunt's Ring/Resurrection Stone*



*Slytherin's Locket*

*Ravenclaw's Diadem*



| | |
|---|---|
| | *Time-Turner Pendant Necklace* |
| **Creatures** | *Hedwig* |



*A Dementor*

*Fawkes*

| | |
|---|---|
| **Locations** |  |

*King's Cross Station*

*King's Cross Station and Platform 9 and 3/4*

*Hogwarts*



*Hogwarts*



*Diagon Alley*

| **Symbols** | <br>*The Dark Mark* |

10.     The HP Copyrighted Works are registered with the United States Copyright Office. True and correct copies of the records from the U.S. Copyright Office website for the HP Copyrighted Works are attached hereto as **Exhibit 1**.

11.     Among the exclusive rights granted to WBEI under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the HP Copyrighted Works to the public.  Since first publication, the HP Copyrighted Works have been used on HP Products and are featured at various Harry Potter-themed parks and attractions, Harry Potter stores owned and/or controlled by WBEI, and on WBEI's www.harrypottershop.com website.

12.     Many trademarks deriving from the Harry Potter fictional universe are registered with the United States Patent and Trademark Office, and HP Products typically include at least one of WBEI's registered trademarks.  WBEI uses its trademarks in connection with the marketing of HP Products and Services, including the following registered marks which are collectively referred to as the "HP Trademarks."

| Registration Number | Trademark |
| --- | --- |
| 2,450,787<br>2,450,788<br>2,479,341<br>2,493,484<br>2,497,083<br>2,506,165<br>2,506,166<br>2,525,908<br>2,568,097<br>2,568,098<br>3,926,486<br>5,834,087<br>6,563,454<br>7,133,214 | HARRY POTTER |
| 2,457,302<br>2,526,111<br>2,530,755<br>2,574,410<br>2,683,060<br>2,685,932 |  |
| 5,962,675<br>5,962,676<br>6,707,698<br>6,707,699<br>6,719,187<br>6,907,319<br>7,122,049<br>7,279,539 | MISCHIEF MANAGED |
| 6,936,678<br>6,936,703<br>6,936,706<br>6,936,715<br>6,936,716<br>6,943,316 | EXPECTO PATRONUM |

| | |
|---|---|
| 6,621,695<br>6,621,696<br>6,621,698 | NIMBUS 2000 |
| 5,945,688<br>5,945,689<br>5,945,690<br>5,945,691<br>6,701,853<br>6,701,854<br>6,809,199 | BOWTRUCKLE |
| 5,994,184<br>5,994,185<br>6,011,345<br>6,011,346<br>6,011,347<br>6,011,348<br>6,050,795 | PORPENTINA GOLDSTEIN |
| 5,935,739<br>5,935,740<br>5,935,742<br>6,011,349<br>6,011,350<br>6,011,351<br>6,011,352<br>6,011,353 | QUEENIE GOLDSTEIN |
| 5,964,717<br>6,119,654<br>6,119,655<br>6,240,287<br>6,240,288<br>6,974,711<br>7,037,272 | I SOLEMNLY SWEAR THAT I AM UP TO NO GOOD |
| 6,011,334<br>6,011,335<br>6,011,336<br>6,011,337<br>6,011,338 | NO-MAJ |
| 5,994,186<br>5,994,187<br>5,994,188<br>5,994,189<br>5,994,190<br>6,011,354 | JACOB KOWALSKI |

| | |
|---|---|
| 5,970,982<br>5,970,983<br>5,970,984<br>5,970,985<br>5,970,986<br>5,970,987<br>5,970,988 | PERCIVAL GRAVES |
| 4,560,670<br>4,941,597<br>6,072,780 | GRINGOTTS |
| 5,625,574<br>6,017,086 | GOLDEN SNITCH |
| 5,851,547<br>5,851,548<br>5,851,549<br>5,851,550<br>5,851,551<br>5,851,552 | ACCIO |
| 5,867,701<br>5,867,702<br>5,867,704 | THE BLIND PIG |
| 5,845,456<br>5,845,457<br>5,845,460<br>5,850,786<br>5,850,787<br>5,850,790<br>5,850,792<br>5,850,796<br>5,882,924 | MACUSA |
| 2,491,427<br>2,495,015<br>2,497,076<br>2,550,774<br>3,986,326<br>3,986,328<br>4,053,475<br>5,396,287<br>5,497,874<br>5,799,829 | HOGWARTS |
| 5,710,360<br>5,734,453<br>5,921,351<br>5,956,041 | FANTASTIC BEASTS |

| | |
|---|---|
| 5,100,666<br>5,114,810<br>5,137,845<br>5,218,768<br>5,245,110<br>5,306,455<br>5,340,954<br>5,793,687<br>5,793,690<br>5,793,692<br>5,849,244 | FANTASTIC<br>BEASTS AND<br>WHERE TO<br>FIND THEM |
| 5,769,819<br>5,769,820<br>5,769,821<br>5,769,822<br>5,769,823<br>5,769,824<br>5,775,620<br>5,775,621<br>5,918,254<br>5,951,365<br>6,228,613<br>6,228,614<br>6,694,545 | FANTASTIC<br>BEASTS:<br>CRIMES OF<br>GRINDELWALD |
| 5,124,606<br>5,142,072<br>5,241,734<br>5,241,735<br>5,793,707<br>5,793,708<br>5,793,709<br>5,793,711<br>5,894,692 | NEWT<br>SCAMANDER |
| 5,680,668<br>5,680,669<br>5,910,044<br>5,910,045<br>5,910,046<br>5,910,047<br>5,945,686<br>6,195,792<br>6,701,852 | NIFFLER |
| 6,159,282<br>6,365,013 | MAGICAL<br>MISCHIEF |

| | |
|---|---|
| 5,800,492<br>5,800,493<br>5,800,494<br>5,935,579 | DEMIGUISE |
| 5,799,864<br>5,799,869<br>5,930,436 | FWOOPER |
| 5,109,849<br>5,109,878 | TIME-TURNER |
| 4,876,091<br>5,142,071<br>5,561,924 | CHUDLEY CANNONS |
| 5,956,169<br>6,245,804<br>6,329,124 | PORTKEY GAMES |
| 3,652,894<br>4,870,849 | LUNA LOVEGOOD |
| 3,958,443<br>5,636,121 | ZONKO'S |
| 3,975,162<br>4,194,934<br>5,487,385 | OWL POST |
| 4,863,368<br>4,868,504<br>5,223,440 | TALES OF BEEDLE THE BARD |
| 3,931,730 | FLIGHT OF THE HIPPOGRIFF |
| 4,663,862<br>5,271,512 | LEAKY CAULDRON |
| 4,237,725<br>4,581,231<br>4,632,764<br>5,131,616<br>5,561,303 | MUGGLE |
| 2,632,412 | MUGGLES |
| 3,059,408<br>4,973,854 | DEMENTOR |

| | |
|---|---|
| 3,868,831<br>5,012,596<br>5,306,653<br>5,306,713<br>5,389,930<br>5,389,999<br>5,414,521<br>5,414,522<br>5,419,836<br>5,460,527<br>5,511,035<br>5,573,030 | BUTTERBEER |
| 2,719,635<br>3,994,446<br>4,023,251<br>4,226,195<br>4,227,388<br>4,396,409 | RAVENCLAW |
| 2,508,004<br>2,525,903<br>3,994,447<br>4,002,983<br>4,023,252<br>4,026,600<br>4,132,174 | SLYTHERIN |
| 2,480,839<br>2,516,387<br>2,607,934<br>3,998,723<br>3,998,724<br>4,019,867<br>4,023,249 | GRYFFINDOR |
| 2,505,434<br>3,994,445<br>4,002,982<br>4,023,250<br>4,061,026<br>4,074,874 | HUFFLEPUFF |
| 3,901,355<br>4,664,387<br>7,185,871 | OLLIVANDERS |
| 2,483,583<br>2,502,927<br>4,012,945<br>4,573,507 | HEDWIG |

| | |
|---|---|
| 6,770,302<br>6,770,307 | HEDWIG'S THEME[2] |
| 7,356,891<br>7,375,778 | AVADA KEDAVRA |
| 7,356,889<br>7,503,442 | WINGARDIUM LEVIOSA |
| 7,062,280 |  |
| 6,761,342 | PIN SEEKING |
| 4,969,076<br>5,091,446 | PLATFORM 9 3/4 |
| 7,190,551<br>7,190,552<br>7,190,553<br>7,340,488<br>7,340,489<br>7,409,185<br>7,409,186<br>7,409,187<br>7,409,188 |  |
| 7,164,728 | GLADRAGS WIZARDWEAR |
| 2,919,933<br>3,056,159 | BUCKBEAK |
| 2,456,415<br>2,483,585<br>3,986,052<br>3,986,060<br>4,019,970<br>4,109,233 | QUIDDITCH |
| 2,595,096<br>2,759,251<br>3,177,731 | THE SORTING HAT |
| 2,528,301<br>2,621,823 | HAGRID |

[2] These are sound marks consisting of the first fifteen bars of "Hedwig's Theme," a musical motif used in all eight *Harry Potter* films.

| | |
|---|---|
| 2,458,608<br>4,009,793<br>4,183,615 | HERMIONE GRANGER |
| 2,456,416<br>2,570,390<br>3,948,415 | RON WEASLEY |
| 2,702,878<br>3,966,674 | ALBUS DUMBLEDORE |
| 3,901,354<br>3,975,167<br>4,338,994 | HONEYDUKES |
| 3,929,808<br>4,488,713 | HOG'S HEAD |
| 3,887,250 | THREE BROOMSTICKS |
| 5,387,002 | HOGSMEADE |
| 6,701,053 | MIRROR OF ERISED |
| 6,629,012 | HAGRID'S MAGICAL CREATURES MOTORBIKE ADVENTURE |
| 7,026,102 | WIZARDING WEDNESDAYS |
| 6,732,155 | DARK ARTS |
| 6,463,985 | NICOLAS FLAMEL |
| 6,441,675 | WIZARDING PASSPORT |
| 6,323,348 | KEYS AND CURIOS |
| 7,096,177 | DAILY PROPHET |
| 7,080,625 | PHOENIX WAND |
| 5,798,353 | HARRY POTTER: HOGWARTS MYSTERY |
| 5,751,749 | HARRY POTTER AND THE CURSED CHILD |
| 4,983,875 | DOBBY |
| 2,701,382 | SNAPE |

| | |
|---|---|
| 2,489,063 | BERTIE BOTT'S EVERY FLAVOR BEANS |
| 2,801,298 | FAWKES |
| 4,049,613 | DIAGON ALLEY |
| 4,060,320 | PROFESSOR DUMBLEDORE |
| 3,929,202 | HARRY POTTER AND THE FORBIDDEN JOURNEY |
| 3,890,843 | DERVISH AND BANGES |
| 6,348,112 | KNIGHT BUS |
| 4,425,852 | REMEMBRALL |
| 4,198,833 | GINNY WEASLEY |
| 3,508,583 | DUMBLEDORE'S ARMY |
| 2,669,605 | LORD VOLDEMORT |
| 2,643,496 | SCABBERS |
| 3,917,661 | MAGIC NEEP |
| 2,579,560 | DRACO MALFOY |
| 3,005,958 3,378,405 | HARRY POTTER AND THE SORCERER'S STONE |
| 3,378,401 | HARRY POTTER AND THE CHAMBER OF SECRETS |
| 2,973,235 4,061,080 4,498,415 | HARRY POTTER AND THE PRISONER OF AZKABAN |
| 3,104,726 4,467,108 4,649,583 | HARRY POTTER AND THE GOBLET OF FIRE |
| 3,340,899 3,419,797 3,419,796 3,525,664 | HARRY POTTER AND THE ORDER OF THE PHOENIX |

| | |
|---|---|
| 3,709,670<br>3,719,406<br>3,787,931<br>3,818,958<br>3,908,384 | HARRY POTTER AND THE HALF-BLOOD PRINCE |
| 4,050,182<br>4,053,693<br>4,060,897 | HARRY POTTER AND THE DEATHLY HALLOWS |
| 6,124,680<br>6,124,681<br>6,124,683<br>6,124,684<br>6,124,687<br>6,124,688<br>6,124,689<br>6,124,690<br>6,124,691 | MARAUDER'S MAP |
| 5,530,768<br>5,530,769<br>5,530,770<br>5,530,771<br>5,530,772<br>5,541,501 | J.K. ROWLING'S WIZARDING WORLD |
| 3,864,766<br>3,864,767<br>3,864,768<br>3,864,769<br>3,883,225<br>3,894,184<br>3,894,185<br>3,894,186<br>3,911,377<br>3,920,029<br>3,925,834 | THE WIZARDING WORLD OF HARRY POTTER |
| 6,672,355<br>6,672,356<br>6,834,121<br>6,834,122<br>6,834,123<br>6,901,373 | WIZARDING WORLD |

| | |
|---|---|
| 6,096,860<br>6,283,506<br>6,283,507<br>6,283,508<br>6,283,509<br>6,283,510<br>6,283,511<br>6,283,512<br>6,289,772<br>6,289,773<br>6,301,691<br>6,731,980<br>6,754,551<br>6,996,866 |  |
| 4,973,375<br>5,129,404 |  |
| 4,928,689<br>4,952,370<br>5,166,914 |  |

| | |
|---|---|
| 5,140,245 |  |
| 5,660,150<br>5,660,152<br>5,660,154<br>5,660,156<br>5,660,158<br>5,660,159 | |
| 5,665,723<br>5,666,311<br>5,779,064<br>5,797,424 | |

| | |
|---|---|
| 5,628,824<br>5,656,809<br>5,656,810<br>5,656,811 | |
| 5,779,069<br>5,797,356<br>5,797,427<br>5,871,006 | |
| 5,571,738<br>5,571,739<br>5,581,853<br>5,581,854 | |



| | |
|---|---|
| 5,797,321<br>5,797,357<br>5,797,425<br>5,797,457 |  |
| 5,581,845<br>5,581,846<br>5,581,847<br>5,581,848 | |
| 5,757,632<br>5,757,641<br>5,757,764<br>5,811,075 | |

| | |
|---|---|
| 5,656,812<br>5,656,813<br>5,656,814<br>5,656,815 |  |
| 5,698,239<br>5,698,240<br>5,698,242<br>5,698,243 | |

13.     The U.S. registrations for the HP Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the HP Trademarks constitute *prima facie* evidence of their validity and of WBEI's exclusive right to use the HP Trademarks pursuant to 15 U.S.C. § 1057(b) and, in the case of WBEI's incontestable registrations, the registrations constitute conclusive evidence of their validity and of WBEI's exclusive right to use said marks pursuant to 15 U.S.C. § 1115(b).  True and correct copies of the United States Registration Certificates for the HP Trademarks, and affidavits of incontestability for the incontestable registrations, are attached hereto as **Exhibit 2**.

14. The HP Trademarks are exclusive to WBEI and are displayed extensively on HP Products and in marketing and promotional materials. The HP Trademarks are also distinctive when applied to HP Products, signifying to the purchaser that the products come from WBEI and are manufactured to WBEI's quality standards. Whether WBEI manufactures the products itself or contracts with licensees to do so, WBEI has ensured that products bearing the HP Trademarks are manufactured to the highest quality standards.

15. WBEI's use of the HP Trademarks has built substantial goodwill in the HP Trademarks. As such, the HP Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have never been abandoned. The success of the Harry Potter franchise, in addition to the marketing of HP Products, has enabled the Harry Potter brand to achieve widespread recognition and fame and has made the HP Trademarks some of the most well-known and world famous marks in the entertainment industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Harry Potter brand have made the HP Trademarks valuable assets of WBEI.

16. Products bearing the HP Trademarks have been the subject of substantial and continuous marketing and promotion. WBEI has marketed and promoted, and continues to market and promote, HP Products in the industry and to consumers through traditional print media, authorized retailers, social media sites, point of sale material, and WBEI's www.harry pottershop.com website.

17. WBEI has expended substantial time, money, and other resources advertising, promoting, and marketing HP Products. HP Products have also been the subject of extensive unsolicited publicity due to the success of the Harry Potter brand. As a result, products bearing the HP Trademarks are widely recognized and exclusively associated by consumers as being high-

quality products sourced from WBEI.  The HP Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks.  As such, the goodwill associated with the HP Trademarks is of immeasurable value to WBEI.

18.  HP Products are sold only by WBEI or through authorized licensees and are recognized by the public as being exclusively associated with the Harry Potter brand.

19.  Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to WBEI.  On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

20.  On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for WBEI to learn Defendants' true identities and the exact interworking of their infringing network.  If Defendants provide additional credible information regarding their identities, WBEI will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

21.  The success of the Harry Potter brand has resulted in significant counterfeiting of the HP Trademarks and infringement of the HP Copyrighted Works.  Because of this, WBEI has implemented a brand protection program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps.  Recently, WBEI has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace

platforms like Amazon.com, Inc. ("Amazon"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

22. Because the infringing products sold by offshore online infringers do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

23. Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland

Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at p. 161.

24.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell Unauthorized Products to residents of Illinois.

25.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Amazon Pay, PayPal, and/or Stripe. E-commerce stores operating under the Seller

Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. WBEI has not licensed or authorized Defendants to use the HP Trademarks and/or to copy or distribute the HP Copyrighted Works, and none of the Defendants are authorized retailers of HP Products.

26. Many Defendants also deceive unknowing consumers by using the HP Trademarks within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to HP Products. Other e-commerce stores operating under the Seller Aliases omit using the HP Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for HP Products.

27. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

28. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

29. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating

under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

30. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by brand owners, such as WBEI, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

31. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite WBEI's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to WBEI.

32. Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from WBEI have knowingly and willfully used, and continue to use, the HP Trademarks and/or copies of the HP

Copyrighted Works in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the United States and Illinois over the Internet.

33.     Defendants' unauthorized use of the HP Trademarks and/or copies of the HP Copyrighted Works in connection with the advertising, distribution, offering for sale, and/or sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming WBEI.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

34.     WBEI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35.     This is a trademark infringement action against certain Defendants[3] based on their unauthorized use in commerce of counterfeit imitations of the HP Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The HP Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from products offered, sold, or marketed under the HP Trademarks.

36.     Certain Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products using counterfeit reproductions of the HP Trademarks without WBEI's permission.

37.     WBEI owns the HP Trademarks.  WBEI's United States registrations for the HP Trademarks are in full force and effect.  On information and belief, certain Defendants have knowledge of WBEI's rights in the HP Trademarks and are willfully infringing and intentionally

---

[3] Count I applies to all Defendants who infringed the HP Trademarks, as outlined in Schedule A attached hereto.

using infringing and counterfeit versions of the HP Trademarks. Those Defendants' willful, intentional, and unauthorized use of the HP Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

38.     Certain Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.     WBEI has no adequate remedy at law and if certain Defendants' actions are not enjoined, WBEI will continue to suffer irreparable harm to its reputation and the goodwill of the HP Trademarks.

40.     The injuries and damages sustained by WBEI have been directly and proximately caused by certain Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

41.     WBEI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

42.     Certain Defendants'[4] promotion, marketing, offering for sale, and/or sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with WBEI or the origin, sponsorship, or approval of Defendants' Unauthorized Products by WBEI.

---

[4] Count II applies to all Defendants who infringed the HP Trademarks, as outlined in Schedule A attached hereto.

43.     By using the HP Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, certain Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

44.     Certain Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45.     WBEI has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Harry Potter brand if certain Defendants' actions are not enjoined.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 and 501)

46.     WBEI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47.     The HP Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*

48.     WBEI owns the HP Copyrighted Works.  WBEI has complied with the registration requirements of 17 U.S.C. § 411(a) for the HP Copyrighted Works.  The HP Copyrighted Works are protected by copyright registration numbers which were duly issued to WBEI by the United States Copyright Office. At all relevant times, WBEI has been, and still is, the owner of all rights, title, and interest in the HP Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

49.     On information and belief, Defendants had access to the HP Copyrighted Works through, without limitation, (1) access to HP Products, which are distributed and sold to consumers

by WBEI through authorized licensees and retail channels, including at various Harry Potter-themed parks and attractions, Harry Potter stores owned and/or controlled by WBEI, and through WBEI's www.harrypottershop.com website; (2) access to the *Harry Potter* movies; and (3) access to the *Harry Potter* books.

50.     Without authorization from WBEI, or any right under the law, certain Defendants[5] have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the HP Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products.  Certain Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the HP Copyrighted Works. Such conduct infringes and continues to infringe the HP Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

51.     Certain Defendants reap the benefits of the unauthorized copying and distribution of the HP Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

52.     Certain Defendants have unlawfully appropriated WBEI's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the HP Copyrighted Works, including the distinctive characters embodied therein.

53.     On information and belief, certain Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to WBEI's rights.

54.     Certain Defendants, by their actions, have damaged WBEI in an amount to be determined at trial.

---

[5] Count III applies to all Defendants who infringed the HP Copyrighted Works, as outlined in Schedule A attached hereto.

55.     Certain Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause WBEI great and irreparable injury that cannot fully be compensated or measured in money.  WBEI has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, WBEI is entitled to a preliminary and permanent injunction prohibiting further infringement of the HP Copyrighted Works.

### PRAYER FOR RELIEF

WHEREFORE, WBEI prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the HP Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a HP Product or is not authorized by WBEI to be sold in connection with the HP Trademarks;

   b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the HP Copyrighted Works in any manner without the express authorization of WBEI;

   c.  passing off, inducing, or enabling others to sell or pass off any product as a HP Product or any other product produced by WBEI, that is not WBEI's or not produced under the authorization, control, or supervision of WBEI and approved by WBEI for sale under the HP Trademarks and/or the HP Copyrighted Works;

   d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or

supervision of WBEI, or are sponsored by, approved by, or otherwise connected with WBEI;

e. further infringing the HP Trademarks and/or the HP Copyrighted Works and damaging WBEI's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for WBEI, nor authorized by WBEI to be sold or offered for sale, and which bear any of the HP Trademarks and/or the HP Copyrighted Works;

2) Entry of an Order that, upon WBEI's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including Amazon, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of infringing goods using the HP Trademarks and/or the HP Copyrighted Works;

3) That certain Defendants account for and pay to WBEI all profits realized by those Defendants by reason of those Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the HP Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that WBEI be awarded statutory damages, for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2), of $2,000,000 for each and every use of the HP Trademarks;

5)      As a direct and proximate result of certain Defendants' infringement of the HP Copyrighted Works, WBEI is entitled to damages as well as those Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6)      Alternatively, and at WBEI's election prior to any final judgment being entered, WBEI is entitled to the maxium amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7)      WBEI is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8)      That WBEI be awarded its reasonable attorneys' fees and costs; and

9)      Award any and all other relief that this Court deems just and proper.

Dated this 27th day of February 2025.    Respectfully submitted,


<u>/s/ Martin F. Trainor</u>
Martin F. Trainor
Sydney Fenton
Alexander Whang
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
alexander@tme-law.com

*Counsel for Plaintiff Warner Bros. Entertainment Inc.*